**Albert C. SELSOR, Plaintiff,**

v.

**CALLAGHAN & COMPANY,
Defendant.**

**No. 83 C 8147.**

United States District Court,
N.D. Illinois, E.D.

Feb. 25, 1985.

---

Elliott M. Paul, Rosenfield, Kaplan & Halprin, Chicago, Ill., for plaintiff.

Kenneth A. Jenero, Borovsky, Ehrlich & Kronenberg, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Callaghan & Company ("Callaghan") fired Albert Selsor ("Selsor") in 1983. Selsor was 58 years old then and had worked for Callaghan for 12 years. He filed this lawsuit against Callaghan, alleging that his dismissal violated the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 *et seq.* The parties have completed discovery, and Callaghan has moved for summary judgment. For the reasons stated below, that motion is granted.

The following material facts are undisputed.[1] Callaghan is a publisher of legal books and research materials. It hired Selsor in 1971 as Advertising Manager. Born February 21, 1925, Selsor was 46 when hired.

Before 1979 Callaghan was fairly small, holding a fraction of the legal publications market. In 1979 Callaghan became a subsidiary of "International Thomson Organisation Limited" ("Thomson"), which planned to expand Callaghan's share of the legal publications market. In February of 1981, Callaghan hired Randy Cochran ("Cochran") as Vice-President of Marketing to develop its policy of expansion. Cochran was a supervisor of Selsor. Cochran made many changes, and Selsor concedes that Cochran was effective.

Shortly after joining Callaghan, Cochran told Selsor that he respected the years of service Selsor had given to the company, and that he was looking forward to using his experience. In June of 1981, Cochran evaluated Selsor. Selsor received a satisfactory evaluation, which contained both praise and suggestions for improvement. In particular, Cochran felt that Selsor needed to solicit competitive bids for advertising and become more cost effective. Among Selsor's strong points were his "experience with Callaghan" and his "attitude." Following this evaluation, Cochran told Selsor that he would monitor Selsor's performance concerning cutting costs, and that this was considered an important part of Selsor's job.

Cochran grew more dissatisfied with certain aspects of Selsor's performance, especially with Selsor's failure to expand the range of suppliers and solicit competitive bids. Cochran met with Selsor on September 4, 1981, to review Selsor's strengths and weaknesses, which were listed in a memorandum given to Selsor. Cochran felt that Selsor had set unrealistic timetables, was time-oriented rather than task-oriented, had not solicited bids successfully and had not been assertive enough with outsiders. Selsor understood that Cochran felt that these were problems with his performance.

At the September 4 meeting, Cochran told Selsor that he was planning to hire an Assistant Advertising Manager, who would eventually assume Selsor's position. Cochran felt that Selsor had weaknesses as a manager, but had strengths on the creative side of advertising. Thus, Selsor would at some time work on the creative end of the business. On December 14, 1981, Callaghan hired Edwyn Gold ("Gold"), then 47 years old, as Assistant Advertising Manager. Selsor was one of the people who interviewed Gold, and he agreed that Gold was the best applicant for the job.

Gold was an effective manager. He cut costs and streamlined the advertising operation. Meanwhile, Cochran became increasingly dissatisfied with Selsor's performance and his attitude. He and Selsor had had several discussions in which Cochran said that Selsor was not responding well to Cochran's new system. Finally, at a marketing meeting on December 20, 1982, Cochran stated that two or three unnamed employees were "coasting," and not responding to Cochran's programs. He called for their resignations by the end of January 1983. Selsor learned that he was one of these unnamed employees, and a few days later he went to see Cochran. Cochran said, among other things, that Selsor's attitude had been deteriorating, that he and Gold had not been getting along,

---

**1.** Callaghan submitted a statement of undisputed facts in accordance with Local Rule 12(e). Selsor did not formally file a "concise statement of genuine issues," as Local Rule 12(f) requires of him. That rule states that "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party." While Selsor did not file a Rule 12(f) statement with his motion, he did file a similar statement as part of his pretrial order materials. That statement did not contradict, nor did his memorandum contradict, the great majority of the facts in Callaghan's Rule 12(e) statement. Selsor merely added some facts and disagreed with the weight Callaghan gave and conclusions it drew from its proffered facts. Accordingly, we will treat Callaghan's Rule 12(e) statement as undisputed as to the basic facts set out there.

and that he had not been giving "110 percent." Cochran told Selsor that he was going to follow through on his plan of naming Gold as Advertising Manager. Selsor would assume the position of "Production Coordinator" and keep the same salary and benefits. This change was made in January 1983. Selsor admits that the change was a reasonable business decision.

Although Selsor's relationship with Gold had been good initially, their rapport gradually deteriorated. They developed a personality conflict. This conflict intensified when Gold became Advertising Manager. Selsor had thought he and Gold were to have equal authority. However, he found himself subservient to Gold in his new position. Selsor became unhappy, according to his deposition testimony, because he never actually received creative work or a description of his new job. Instead, he was given clerical and menial tasks. Meanwhile, Gold was dissatisfied with Selsor's work and attitude. Gold felt that Selsor had made several mistakes. Selsor does not deny that he made mistakes, but says that they were easily corrected and cost the company nothing. Selsor admits that Gold frequently criticized him and yelled at him.

Finally, on April 1, 1983, Selsor was formally placed on thirty days probation. His notice listed several mistakes and deficiencies. He decided to take two weeks vacation then. Before leaving, he asked to be placed in another position at Callaghan. When he returned, he was told that no jobs were available. His last day at Callaghan was April 23, 1983. No one was hired to replace him as Production Coordinator. He filed this lawsuit later that year, alleging that he was discharged because of his age.

■ Section 623 of the ADEA makes it illegal for an employer "to discharge any individual ... because of such individual's age." 29 U.S.C. § 623(a). As plaintiff, Selsor bears the burden of proving that age was a determining factor in Callaghan's decision to fire him; that is, he must prove that "but for" his age, Callaghan

would not have fired him. *See, e.g., LaMontagne v. American Convenience Products, Inc.,* 750 F.2d 1405, 1409 (7th Cir.1984). Selsor may take two tacks in proving age discrimination. First, he may prove by direct or circumstantial evidence that he was dismissed because of his age. *Id.* Selsor has not relied on this approach. He has chosen the second, much more common approach, based on the burden-shifting tests of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

■ Under the *McDonnell Douglas* approach, as modified for the context of an ADEA case,[2] Selsor may make out a prima facie case of age discrimination by showing (1) that he was in the age group protected by the ADEA, that is, between 40 and 70 years old; (2) that he was doing his job well enough to satisfy Callaghan's legitimate expectations; (3) that he was fired; and (4) that Callaghan sought a replacement for him. *LaMontagne,* at 1409–10; *Huhn v. Koehring Co.,* 718 F.2d 239, 242–43 (7th Cir.1983). If Selsor meets this burden, he enjoys a presumption that he was dismissed because of his age. However, Callaghan may rebut this presumption by articulating a lawful reason for the discharge. This is merely a burden of production. The burden of proof always rests on the plaintiff. *See, e.g., LaMontagne,* at 1409, *citing Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). If Callaghan dissolves the presumption, to prevail Selsor must prove that the articulated reasons are a pretext, by showing either that Callaghan was more likely motivated by a discriminatory reason or that its justification is not credible. *Id.* Under this indirect method of proof, it is possible to prove age discrimination without introducing any evidence that age motivated the employer. *Id.* at 1409–10.

■ Our present task in applying the above standards is to decide whether sum-

---

**2.** *McDonnell Douglas* was a Title VII case, but its methodology has been applied generally to ADEA cases. *See, e.g., LaMontagne,* at 1409 n. 1.

mary judgment is appropriate. Summary judgment is unusual in an employment discrimination case because so much often depends on an employer's credibility and his or her hidden or unconscious motives. However, summary judgment may be appropriate where no evidence suggests that motive and intent are involved. *See Kephart v. Institute of Gas Technology,* 630 F.2d 1217, 1218 (7th Cir.1980), *cert. denied,* 450 U.S. 959, 101 S.Ct. 1418, 67 L.Ed.2d 383 (1981); *see also Parker v. Fed'l National Mortgage Assn.,* 741 F.2d 975, 979–81 (7th Cir.1984) (affirming district court entry of summary judgment because of failure to prove pretext); *Huhn,* 718 F.2d at 243–45 (affirming entry of summary judgment because of failure to prove prima facie case). The usual summary judgment standards apply. Summary judgment may be granted only if the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R. Civ.P. 56(c). As the moving party, Callaghan must show that no genuine issue of material fact exists. *Korf v. Ball State University,* 726 F.2d 1222, 1226 (7th Cir. 1984). We must view the evidence, and the reasonable inferences drawn from the evidence, in the light most favorable to Selsor, the party opposing the motion. *Big O Tire Dealers, Inc. v. Big O Warehouse,* 741 F.2d 160, 163 (7th Cir.1984). If Callaghan fails to meet its "strict burden of proof," we must deny summary judgment. *Id.* But if Callaghan does meet its initial burden, we must see whether Selsor has met its resulting burden of creating a genuine issue as to that fact. To meet this burden, Selsor cannot rest on bare pleadings or bald assertions. Fed.R.Civ.P. 56(e); *Big O,* 741 F.2d at 163. With these standards in mind, we turn to the merits.

Because Selsor has presented no direct evidence of age discrimination,[3] we will evaluate the undisputed facts in light of the *McDonnell Douglas* criteria spelled out earlier. The parties agree that Selsor meets two of the criteria. At 58 when fired, Selsor falls within the ADEA's protected age group. Secondly, he was fired.[4] The parties disagree over whether Selsor meets the other two criteria. First, Callaghan contends that Selsor was never replaced as Productions Coordinator and therefore cannot satisfy the fourth element of his prima facie case. Although Selsor was never replaced as Productions Coordinator, one might reasonably infer from the facts that Selsor was in reality "discharged" when Ed Gold replaced him as Advertising Manager in January 1983. Looking at the facts in a light most favorable to Selsor, it is reasonable to infer that the decision to fire Selsor was made then, and the last few months were merely a denouement during which Selsor was "squeezed out" of his new job. We therefore assume for argument's sake that Selsor has satisfied the fourth criterion of his prima facie case.

The crux of Callaghan's position is that Selsor cannot satisfy the second element, that is, that he cannot prove that he was performing well enough to satisfy Callaghan's legitimate expectations. Callaghan relies on the undisputed facts that Cochran and Gold both grew increasingly unhappy with the quality and quantity of Selsor's work. Callaghan emphasizes that the employer's legitimate perceptions are controlling in this analysis. *See Huhn,* 718 F.2d at 244.

The above uncontradicted evidence could likely support a conclusion that Selsor was not satisfying Cochran's legitimate expectations. While Selsor received satisfactory overall reviews in the past, the criticisms of his work were consistent even in these satisfactory reviews. Cochran's dissatisfaction undeniably increased by the end of 1982. We may, like the District Court in

---

**3.** There is one piece of direct evidence, which we discuss below at pp. 1008–1009. In light of our treatment of it below, we need not consider it here.

**4.** The parties dispute whether Selsor was discharged or left of his own accord. For the purposes of this motion, Callaghan conceded that it fired Selsor. Certainly at a minimum, a genuine factual issue exists on that issue.

*Huhn, see* 718 F.2d at 242, approach these facts in one of two ways. On the one hand, we might conclude that the undisputed facts show that Selsor was not performing well enough at the time of his discharge and therefore cannot satisfy the second element of his prima facie case. On the other hand, these facts can be seen as an articulation by Callaghan of a legitimate non-discriminatory reason for Selsor's discharge, thereby rebutting Selsor's prima facie case. Although a finding against Selsor under the first approach is probably appropriate on this record, we will assume that he has made out his prima facie case. But even under this assumption, it is clear that Callaghan has met its burden of articulating lawful reasons for firing Selsor.

██ Selsor has not contradicted Callaghan's evidence that, at the time of his "discharge" (whether viewed as taking place in January or April), he was not performing up to Callaghan's expectations. Cochran's dissatisfaction with Selsor's work grew over a two-year period and constitutes a legitimate non-discriminatory reason for his discharge. Indeed, much uncontested evidence in the record which we have not mentioned above also supports this conclusion. Moreover, Selsor's developing personality conflict with Gold provides a second non-discriminatory reason for his discharge. A personality conflict with a supervisor may be a legitimate reason for discharge, if the conflict is not at all related to the plaintiff's age. *See Chamberlain v. Bissell, Inc.,* 547 F.Supp. 1067, 1077 (W.D.Mich.1982).

██ Because the uncontroverted evidence supports a finding that Callaghan has rebutted Selsor's prima facie case, it is up to Selsor to show that Callaghan's articulated reasons are merely a pretext for age discrimination. He can carry this burden "by showing either that a discriminatory reason more likely motivated the employer or that the employer's proffered explanation is unworthy of credence." *LaMontagne,* at 1414. Selsor cannot satisfy this burden. First, there is no evidence that Callaghan's "proffered explanation," that Selsor was performing below par, is not credible. To the contrary, a great mass of undisputed evidence supports this explanation. Second, there is no credible evidence that age at all motivated Callaghan.[5] This second point requires some explanation.

Selsor argues that a genuine issue of fact exists on the issue of pretext. He points to an affidavit he submitted with his brief in response to Callaghan's summary judgment motion. In that affidavit he swears that in his December 1982 conversation with Cochran, Cochran told him that he wanted to fire him because he was 11 years older than Gold and was thus much closer to retirement. Cochran supposedly said that he wanted to implement his marketing policies with someone who would be around longer. We agree with Selsor that this evidence, if true, could prove that Cochran's proffered explanations were pretextual. Indeed, this evidence might even support a finding of age discrimination under a direct method of proof. However, we must take this evidence in the context of all the evidence in the record. It will soon become clear that this evidence does not create a genuine issue of material fact.

Selsor's affidavit contains the first evidence that age played a role in Cochran's decision. The affidavit contradicts several admissions by Selsor in his deposition that to his knowledge he could not point to *any* direct evidence that age was a factor in Callaghan's decision. He was asked whether Cochran told him that the firing decision was based on age. Selsor replied,

---

**5.** Indeed, much evidence suggests that Cochran viewed age as a plus. Selsor admits that Cochran initially told him that he hoped to make good use of Selsor's experience. Cochran's first formal evaluation of Selsor noted "experience" as one of Selsor's strengths. Similarly, Cochran did not fire another 58 year old manager who had been on shaky ground. Besides Selsor, Don

Goodman (age 58) and Jeanne Garrett (age 40) had been singled out at the December 20, 1982 meeting as "coasting." Garrett, the younger employee, was fired on January 14, 1983. However, Goodman was placed on probation, performed well and still works for Callaghan. At a minimum, then, there is no pattern of prejudice against older employees.

"No, I don't think he's that dumb." Selsor Deposition at 134. Similarly, Selsor denied that anyone at Callaghan ever told him that he was fired for being closer to retirement than Gold:

Q. Did anyone at Callaghan & Company ever do or say anything that would lead you to believe that you were terminated or one of the reasons for your termination was you were closer to retirement age than Ed Gold was?

A. Did anyone say that?

Q. Did anyone say that?

A. No, no.

Selsor Deposition at 470. Selsor also denied knowing of any direct evidence of age discrimination:

Q. Mr. Selsor, did anyone employed by Callaghan & Company ever say to you that age was a factor in your being put on probation?

A. No.

Q. Or in your alleged termination?

A. No.

Q. Did anyone at Callaghan & Company ever disparage you because of your age?

A. No.

Q. Or because they said you were too old or anything like that?

A. No.

Q. Do you believe Randy Cochran would discriminate you because of your age?

A. As the facts turned out, yes.

Q. As the basis for that belief, are you including any facts other than those appearing in response to Interrogatory No. 7? [6]

A. No.

Q. Did anything ever happen to you while you were employed by Callaghan & Company that suggested in any way that anybody at Callaghan & Company thought you were too old to do your job properly?

A. No.

Q. And finally, did anyone at Callaghan & Company tell you you were too old for your job?

A. No, they didn't tell me I was too old for my job.

Selsor Deposition at 430–31. In addition, Selsor's own lawyer asked him several broad questions at the deposition about why he believed age was a factor in his dismissal. Selsor gave no specific evidence in response and never mentioned the statements he now attributes to Cochran in his affidavit. Selsor Deposition at 455–63.[7]

**6.** Interrogatory No. 7 asked:

In paragraph 7 of the Amended Complaint the Plaintiff alleges, *inter alia,* that the Defendant terminated his employment "solely because of his age."

(a) Identify every fact, transaction, occurrence, event and communication upon which the Plaintiff relies in support of the foregoing allegation.

Selsor answered as follows:

ANSWER: Various acts and occurrences during plaintiff's last year of employment with defendant in which plaintiff was charged with various unimportant mistakes, yelled and criticized in front of his staff. Plaintiff was told on various occasions that he wasn't a "team player" for his failure to stay after work and participate in various social functions. Finally, written lists were kept of plaintiff's various mistakes, plaintiff was told to resign under threat of being fired despite the fact that all prior evaluations by plaintiff's direct superiors evidenced plaintiff's satisfactory work performance.

**7.** The basis of Selsor's suspicion appears to be that Gold was making less money than he:

By December 20, when I, this other meeting took place in which he talked about cutting our cancerous growth and I found out I was one of the ones, subsequently, to be cut out, then I went back and realized that I had been the victim of a lot of papering on age discrimination because Ed had been brought into the job at a lesser salary.

I was making $30,000; Ed was making $20,000 and the company obviously could save money if I was forced to retire on all the benefits of retiring.

Selsor Deposition at 456. Significantly, neither here nor at any other relevant points in his deposition did Selsor mention the statement he now attributes to Cochran. Selsor's mere suspicion is not enough to carry his burden of proving pretext. Gold's lower salary, while relevant, does not create a genuine issue of fact when considered in the context of all the evidence.

Finally, Selsor ended his deposition as follows:

> Q. I am asking you if you contend that there are now additional facts supporting your allegation that you were terminated because of your age. Have all of those facts been brought out during the two days of deposition that you have undergone?
>
> A. To the best of my knowledge, yes.
>
> Q. In addition to those, in addition to your specific answer to Interrogatory No. 7 and the testimony that will appear that you gave during your deposition, there are no other facts upon which you rely in support of your allegation that you were discriminated against because of your age, is that correct?
>
> A. Yes.

Selsor Deposition at 479. In sum, Cochran's statements about Selsor's age first appeared in Selsor's affidavit responding to the summary judgment motion, despite several previous denials that such evidence existed.

 No reasonable person could possibly believe that in his deposition Selsor would have omitted to mention Cochran's alleged statements if they were actually made. Although our duty in ruling on this summary judgment motion is to resolve issues of credibility in Selsor's favor, this duty extends only to plausible issues of credibility. Where, as here, "an offer of evidence ... is too incredible to be believed," the court may disregard it. 10A C. Wright, A. Miller & M. Kane, *Federal Practice & Procedure*, § 2727 (1983), at 169–70; *see also 598 Cases, Each Containing 24 Cans, More or Less, of Tomatoes v. United States*, 211 F.2d 249, 251 (7th Cir.1954) (resolve conflicting evidence in favor of party opposing summary judgment unless evidence creating the conflict is "too incredible to be accepted by reasonable minds"). Selsor's new "evidence," which directly contradicts his extensive deposition testimony, cannot

now be used to conjure up a *genuine* factual dispute.[8]

 In sum, we conclude that no genuine factual dispute exists on the issue of whether Callaghan's articulated reasons for firing Selsor were pretextual. Selsor cannot carry his burden of proving pretext, and therefore we may properly grant Callaghan's motion for summary judgment. In reading parts of Selsor's deposition we noticed him complaining that Callaghan treated him shabbily and unfairly. This might very well be, and if so, by this opinion we do not intend to condone such treatment. However, it does not warrant relief under the ADEA absent evidence of age discrimination. We will therefore enter a judgment of dismissal. It is so ordered.

---

**8.** In light of Selsor's deposition testimony, Selsor, his attorney, or both, flirted perilously close to violating Fed.R.Civ.P. 11 in submitting the affidavit.