Jesse **RICHARDSON,**
Plaintiff–Appellant,

v.

Sergeant Curtis **BONDS,**
Defendant–Appellee.

No. 88–1587.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 20, 1988.

Decided Oct. 31, 1988.

Rehearing Denied Nov. 29, 1988.

Kenneth N. Flaxman, Kenneth N. Flaxman, P.C., Chicago, Ill., for plaintiff-appellant.

Mary L. Mikva, Corp. Counsel, Chicago, Ill., for defendant-appellee.

Before BAUER, Chief Judge, and CUDAHY and MANION, Circuit Judges.

CUDAHY, Circuit Judge.

Plaintiff-appellant Jesse Richardson brought this action under 42 U.S.C. section 1983, claiming that he was deprived of his fourth amendment rights when he was arrested by the defendant-appellee, Sergeant Curtis Bonds. The district court granted defendant's motion for summary judgment, based on the qualified immunity afforded public officials. *See Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Plaintiff brings this appeal. We affirm.

## I.

Richardson is a Chicago police officer. On the evening of October 3, 1985, he and a companion, fellow officer Leroy Newman, were seated in a tavern known as the T & J Lounge. Although Richardson and Newman were off duty, both were armed. Sergeant Bonds and two other officers were sent to the T & J Lounge during the late evening of October 3rd or the early morning of October 4th to investigate a citizen complaint that two police officers were in the bar consuming or trafficking in cocaine. Bonds and his men were dressed in street clothes. When Bonds arrived at the scene, he was met outside the bar by a woman who again advised him that two

police officers were "doing" cocaine inside the T & J Lounge.

After entering and conducting a brief examination of the premises, Bonds approached Richardson's companion, Newman, whom Bonds knew to be a Chicago police officer. Bonds informed Newman of the reason for his visit to the tavern. During the conversation, Bonds turned to his two subordinates and asked them to fill out "contact cards" on the patrons of the bar. Completed "contact cards" provide the names and addresses of persons at the scene of a police investigation, and are used to locate witnesses after an incident under investigation. After his brief discussion with Newman, who was seated on Richardson's immediate right, Bonds asked Richardson for identification. Richardson refused, stating only that he was "a patron," and Bonds ordered his men to arrest Richardson. Richardson was transported to the 7th District police station, where he was released without charges at the behest of the watch commander.

The parties disagree as to significant aspects of this encounter. Bonds claims that Newman told him that Richardson was a police officer, that he (Bonds) identified himself before asking Richardson for identification and that plaintiff's gun was visible to Bonds prior to the arrest. Richardson counters that Bonds did not identify himself before the arrest, that Bonds did not know plaintiff was a police officer and that plaintiff's gun was not visible, but was instead concealed beneath his shirt. The parties also dispute whether Bonds arrested Richardson for failing to identify himself on request, as required by regulations of the Chicago Police Department, or for the unlawful possession of a firearm in a tavern.

This case was originally assigned to Judge George N. Leighton. On November 10, 1987, Judge Leighton denied defendant's motion for summary judgment based on the controverted factual issues discussed above. Judge Leighton subsequently vacated this decision in order to allow plaintiff to supplement the documents he had filed in opposition to the motion.

Following Judge Leighton's retirement, the case was reassigned to Judge Holderman. On February 29, 1988, Judge Holderman granted defendant's motion for summary judgment, based on the defense of qualified immunity. Judge Holderman considered the arrest under both tendered justifications: first, that Bonds had arrested Richardson for the latter's failure to identify himself, and second, that Richardson had been arrested for unlawful possession of a firearm. As to Richardson's failure to identify himself, Judge Holderman found that Bonds reasonably could have believed that Richardson was a police officer. Judge Holderman also concluded that "in 1985 it was not clear that an off-duty police officer could not be arrested for failing to identify himself during a legitimate investigation." *Richardson v. Bonds,* No. 86 C 10288, mem. op. at 5 (N.D.Ill. Feb. 29, 1988) [available on WESTLAW, 1988 WL 20041] citing *Brown v. Texas,* 443 U.S. 47, 53 n. 3, 99 S.Ct. 2637, 2641 n. 3, 61 L.Ed.2d 357 (1979).

Judge Holderman also decided that Bonds was justified in arresting Richardson on a weapons charge (presumably on the hypothesis that Richardson had not identified himself as a police officer). Bonds and his companion officers had stated, in affidavits supporting the motion for summary judgment, that Richardson's gun was visible at the time of the arrest. However, both Richardson and Newman, who was seated on Richardson's "gun side," had testified in deposition that Richardson's gun had been concealed beneath his shirt. Despite this apparent conflict in the testimony, Judge Holderman found that summary judgment was appropriate. He reasoned that:

> [P]laintiff's evidence does not sufficiently controvert defendant's evidence so as to preclude this court's resolution of the issue on summary judgment. First, plaintiff did not have personal knowledge of the visibility, to a third person, of his own gun. Mr. Newman had personal knowledge of that fact, but Mr. Newman's attention during the interaction with Sergeant Bonds was directed not at

his friend—who he stood beside—but at Sergeant Bonds and the other officers. Finally, even assuming that plaintiff's shirt covered his gun, Sergeant Bonds could have "noticed" only the bulge under plaintiff's shirt and reasonably inferred that plaintiff had a gun there.[4]

[4] Sergeant Bonds' statement is ambiguous; he does not state that he saw the gun itself.

Mem. op. at 6. Since Judge Holderman found that the arrest was warranted under both tendered justifications,[1] he ruled that Bonds was entitled to qualified immunity as a matter of law, and entered summary judgment in favor of Bonds. This appeal followed.

## II.

■ As a preliminary matter, we consider whether the arrest must be justifiable under both theories in order for Bonds' qualified immunity to be upheld. The district court examined both justifications for Richardson's arrest in its opinion, noting that "[t]he parties dispute whether plaintiff was arrested on a weapons charge or for failure to identify himself as a police officer." Mem. op. at 5 n. 3. The court apparently believed that Bonds' subjective belief as to the legal basis for the arrest was relevant to the probable cause inquiry. While an arresting officer's subjective knowledge of *facts* sufficient to constitute probable cause is central to evaluation of the propriety of an arrest, we do not believe that the officer's view of the *legal basis* for the arrest is important. Under the principles of *Harlow v. Fitzgerald* and the fourth amendment, an objective standard applies where the parties present alternative legal justifications for an arrest. The issue is whether a reasonably compe-

tent police officer, with knowledge of the facts actually known by the arresting officer, would have concluded that probable cause existed to arrest for the offense offered as justification.

Disputes about an arresting officer's actual state of mind at the time of the arrest would quickly resolve themselves into credibility battles, with each side presenting its own *post hoc* explanation of the officer's actions. *See Trejo v. Perez,* 693 F.2d 482, 486 (5th Cir.1982) (assessing legal basis for arrest objectively "obviates the need for a delicate subjective inquiry, likely to turn on little more than self-serving statements and speculation"). If statements made by the officer at the time of the arrest were used as an indication of the offense for which the officer believed probable cause existed, officers could simply remain silent as to the basis for the arrest. *See Kladis v. Brezek,* 823 F.2d 1014, 1018 (7th Cir.1987) (arrestee has no fourth amendment right to be informed of charges at the time of arrest). If charges later filed were used to limit the justifications which could be offered, the officer's (and prosecutor's) discretion would simply be tilted in the direction of overcharging.

■ Despite the availability of these tactics, the question of an officer's *actual* justification for an arrest would rarely be capable of resolution at the summary judgment stage, but would ultimately become a credibility issue for the jury. The objective of *Harlow,* that qualified immunity issues be resolved at the earliest possible stage of the litigation, would be frustrated. In fact, it is for precisely this reason that *Harlow* reformulated the qualified immunity analysis to eliminate inquiry into subjective factors. *See* 457 U.S. at 815–19, 102 S.Ct.

1. We do not have to explore in depth the consequences of the apparently mutually contradictory premises that Bonds knew or did not know Richardson was a policeman. Thus, if Bonds thought him to be a policeman, the gun charge might be problematic. If Bonds thought Richardson was a civilian, the failure to identify charge apparently becomes questionable. A thesis which resolves this conundrum is that a policeman who fails to identify himself may not claim an exemption from the prohibition on carrying a gun. *Cf.* Ill.Rev.Stat. ch. 38,

¶ 24–2(h) (defendant has burden of proving entitlement to exemption from restrictions on firearm possession); *People v. Delk,* 96 Ill.App.3d 891, 902, 52 Ill.Dec. 269, 278, 421 N.E.2d 1341, 1350 (1st Dist.1981) (same); *People v. Goss,* 146 Ill.App.3d 723, 723–24, 100 Ill.Dec. 379, 380, 497 N.E.2d 357, 358 (1st Dist.1986) (while failure to carry identification demonstrating entitlement to exemption is not an independent substantive offense, failure to carry identification is relevant to defendant's entitlement to exemption).

at 2736–39. The determination whether a sufficient legal basis existed for an arrest is therefore a question for the court, employing an objective standard: what a reasonable officer would have believed under the circumstances, given the facts *actually known* to the arresting officer.[2] The officer's actual knowledge of facts sufficient to support probable cause is significant; his or her subjective evaluation of the legal significance of those facts is generally not relevant (with the caveat which follows) to the probable cause determination.

Nevertheless, while an objective standard is to be employed in assessing the legal basis for an arrest, we will not "indulge in *ex post facto* extrapolations of all crimes that might have been charged on a given set of facts at the moment of the arrest, nor [ ] will [we] look favorably upon arguments of the government doing the same. Such an exercise might permit an arrest that was a sham or fraud at the outset, really unrelated to the crime for which probable cause to arrest was actually present[,] to be retroactively validated." *Trejo v. Perez*, 693 F.2d at 485 (quoting *United States v. Atkinson*, 450 F.2d 835, 838 (5th Cir.1971), *cert. denied*, 406 U.S. 923, 92 S.Ct. 1790, 32 L.Ed.2d 123 (1972)). Essentially we have in mind a rationale that would recommend itself to a reasonable police officer acting in good faith. A rationale which is extravagant or novel, or which is based on "stale" facts that could have formed the basis for an earlier arrest,

may be rejected as unreasonable. We will not look favorably on any arrest based on an "arrest now, explain later" policy.[3]

In this case, both proffered rationales for Richardson's arrest would have been apparent to a reasonably competent officer. Clearly, any reasonably competent police officer would be aware that a civilian may not carry a concealed firearm, or carry a firearm in a tavern. *See* Ill.Rev.Stat. ch. 38, ¶¶ 24–1(a)(4), (a)(8) (police officers are exempted from these proscriptions, Ill.Rev. Stat. ch. 38, ¶ 24–2). A reasonably competent officer would also have known of the police department regulation requiring an officer to identify himself in response to inquiries by private citizens or fellow police officers. In fact, based on an internal complaint, Richardson was suspended for five days for violating this regulation. This outcome indicates an official conclusion that a reasonably competent officer would be cognizant of, and should seek to comply with, the mandatory identification regulation.

Since a reasonable police officer would have known of both offenses at issue here, if the arrest can be supported under either tendered justification, Bonds is entitled to qualified immunity.

### III.

We turn first to Richardson's failure to identify himself. To prevail on his

---

**2.** Our holding is consistent with the result reached by every other court to have considered this issue. *See, e.g., United States v. Rambo*, 789 F.2d 1289, 1294 (8th Cir.1986); *United States v. Pollack*, 739 F.2d 187, 191 (5th Cir.1984); *Trejo v. Perez*, 693 F.2d at 486 (section 1983 case; proper inquiry is "whether the conduct that served as the basis for the charge for which there was no probable cause could, in the eyes of a similarly situated reasonable officer, also have served as the basis for a charge for which there was probable cause"); *United States v. Gray*, 659 F.2d 1296, 1300 (5th Cir.1981); *United States ex rel. La Belle v. LaVallee*, 517 F.2d 750, 754 (2d Cir.1975), *cert. denied*, 423 U.S. 1062, 96 S.Ct. 803, 46 L.Ed.2d 655 (1976); *United States v. Dunavan*, 485 F.2d 201, 205 (6th Cir.1973); *United States v. Saunders*, 476 F.2d 5, 7 (5th Cir.1973) ("neither [officer's] subjective reliance on an offense for which no probable cause exists nor his verbal announcement of the

wrong offense vitiates the arrest"); *United States v. Bonds*, 422 F.2d 660, 665 (8th Cir.1970); *United States v. Carr*, 445 F.Supp. 1383, 1386–87 (D.Conn.) *aff'd* 584 F.2d 612, 619 (2d Cir.1978), *cert. denied*, 440 U.S. 935, 99 S.Ct. 1280, 59 L.Ed.2d 494 (1979).

**3.** We can conceive of a situation in which an arrestee could demonstrate, by relying on specific facts, that an arresting officer was acting in bad faith for purposes of harassment or intimidation. Such a showing could warrant a finding that an arrest was invalid. *Cf. United States v. Gray*, 659 F.2d 1296, 1301 n. 8 (5th Cir.1981) (while an objective standard governs the probable cause inquiry, "in a close case, the denial by [the arresting] officials that probable cause existed may well tip the balance toward a finding of no probable cause").

motion for summary judgment, Bonds must show, based on the uncontroverted facts in the record, that his arrest of Richardson for failing to identify himself was lawful, or at least did not violate clearly established law. *See Anderson v. Creighton,* —— U.S. ——, 107 S.Ct. 3034, 3038–39, 97 L.Ed.2d 523 (1987); *Malley v. Briggs,* 475 U.S. 335, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986) (applying "objective reasonableness" standard to allegedly unconstitutional arrest). Police Department Rule 37, which requires that a police officer identify himself on demand by either a private citizen or fellow officer, is incorporated by reference into the ordinances of the City of Chicago. *See* Chicago Mun.Code § 11–32. In Illinois, a police officer may make a warrantless arrest based on an ordinance violation committed in the officer's presence. *People v. Edge,* 406 Ill. 490, 497, 94 N.E.2d 359, 363 (1950).[4]

However, Bonds is not automatically entitled to immunity simply because he relied on a rule authorizing an arrest which had not previously been held invalid. *Cf. Illinois v. Krull,* 480 U.S. 340, 107 S.Ct. 1160, 1170, 94 L.Ed.2d 364 (1987) ("good faith" exception to exclusionary rule applies to search conducted pursuant to statute, "unless a reasonable officer should have known that the statute was unconstitutional"). Even if, at the time of the arrest, there had been no judicial ruling on the validity of Rule 37, we must ask whether "in the light of preexisting law the unlaw-

fulness [of Bonds' conduct was] apparent." *Anderson,* 107 S.Ct. at 3039.

■ At the time of the arrest, it was clearly established that a private citizen could not be arrested for failing to identify himself in response to an inquiry which was part of a legitimate police investigation, absent other suspicious circumstances.[5] But Richardson was a police officer, subject to Rule 37, which specifically required that he identify himself on demand by either a private citizen or a fellow officer. It is certainly not clear whether a *private citizen's* right to refuse to identify himself applies to off-duty law enforcement officers. A person employed by a law enforcement agency does not surrender all his constitutional rights. However, we have little doubt that a person gives up certain rights on joining a police force, such as the right to be stubbornly noncooperative in the face of a legitimate request for identification. *Compare Rankin v. McPherson,* 483 U.S. 378, 107 S.Ct. 2891, 2899, 97 L.Ed.2d 315 (1987) (deputy constable could not be discharged for statement related to matter of public concern unless speech "impedes the performance of the speaker's duties or interferes with the regular operation of the enterprise") *with Kelley v. Johnson,* 425 U.S. 238, 247, 96 S.Ct. 1440, 1446, 47 L.Ed.2d 708 (1976) (although private citizens may have liberty interest in personal appearance, police department grooming regulation upheld where there is a "rational connection be-

---

**4.** Of course, state law defines the authority of an officer to arrest for a given offense; federal law only asks whether the officer had probable cause to believe that the predicate offense had been committed. *Michigan v. DeFillippo,* 443 U.S. 31, 36, 99 S.Ct. 2627, 2631, 61 L.Ed.2d 343 (1979) ("Whether an officer is authorized to make an arrest ordinarily depends, in the first instance, on state law.").

**5.** As Justice White explained in *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), which first approved of brief noncustodial police interrogation based on reasonable suspicion, "[o]f course, the person stopped is not obliged to answer, ... and refusal to answer furnishes no basis for an arrest, although it may alert the officer to the need for continued observation." *Id.* at 34, 88 S.Ct. at 1886 (concurring opinion). This statement has been recognized as authoritative in several circuits, including

this one. *Moya v. United States,* 761 F.2d 322, 325 (7th Cir.1984) ("Probable cause is not established [ ] by failing to present identification upon request by a law enforcement officer."); *United States v. Brown,* 731 F.2d 1491, 1494 (11th Cir.), *modified on other grounds,* 743 F.2d 1505 (11th Cir.1984) (per curiam); *Lawson v. Kolender,* 658 F.2d 1362, 1366–69 (9th Cir.), *aff'd on other grounds,* 461 U.S. 352, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983); *Spring v. Caldwell,* 516 F.Supp. 1223, 1229–30 (S.D.Tex.1981), *rev'd on other grounds,* 692 F.2d 994 (5th Cir.1982); *see also Kolender v. Lawson,* 461 U.S. 352, 362, 103 S.Ct. 1855, 1860, 75 L.Ed.2d 903 (1983) (Brennan, J., concurring) ("States may not authorize arrest and criminal prosecution of an individual for failing to produce identification or further information on demand by a police officer.").

tween the regulation ... and the promotion of safety of persons and property"). We conclude that, at the time of the arrest, it was not clearly established that an off-duty police officer could not be arrested for failing to identify himself, as required by a police department regulation.

The operative question then becomes whether or not Bonds knew Richardson was a police officer at the time of the arrest.[6] Richardson argues, in a statement filed pursuant to Local Rule 12(f),[7] that a genuine issue of fact exists as to whether Bonds knew that Richardson was a police officer at the time of the arrest. *See* Plaintiff's Amended Rule 12(f) Statement at ¶ 18. Unfortunately, this assertion contradicts the sworn statement Richardson made six days after his arrest, as part of the internal complaint which he had lodged against Bonds. *See* Richardson Dep. Exh. # 1, at 3 (May 27, 1987) ("The sergeant asked for identification. When I refused Leroy [Newman] told him I was a police officer."). Further, during his deposition Richardson stated that, after his arrest, Newman "reminded them [Bonds and the other arresting officers] *again* that I was a police officer." Richardson Dep. at 34 (emphasis supplied). Newman, who otherwise supports Richardson's version of the incident, also testified at his deposition that he

told Bonds that Richardson was a police officer *prior* to the arrest. Newman Dep. at 14 (June 5, 1987).

Given these prior statements, Richardson's last-minute change of position in his Rule 12(f) statement is insufficient to raise a genuine issue of material fact. A party may not create a *genuine* issue of fact by contradicting his own earlier statements, at least without a plausible explanation for the sudden change of heart. As we have recently stated, "[i]t is well established that a party cannot create a genuine issue of fact by submitting an affidavit containing conclusory allegations which contradict plain admissions in prior deposition or otherwise sworn testimony." *Diliberti v. United States*, 817 F.2d 1259, 1263 (7th Cir.1987); *see also Adelman–Tremblay v. Jewel Cos., Inc.*, 859 F.2d 517, 520–21 (7th Cir.1988); *Babrocky v. Jewel Food Co.*, 773 F.2d 857, 861–62 (7th Cir.1985); *Camfield Tires, Inc. v. Michelin Tire Corp.*, 719 F.2d 1361, 1366 (8th Cir.1983); *Selsor v. Callaghan & Co.*, 609 F.Supp. 1003, 1010 (N.D.Ill.1985). Attempts to manufacture issues of fact in response to a motion for summary judgment may be a basis for sanctions. *See Selsor*, 609 F.Supp. at 1010 n. 8 (party and his attorney "flirted perilously close to violating Fed.R. Civ.P. 11 in submitting [an] affidavit"

**6.** Both in the district court and on appeal Richardson has contended that a genuine issue of material fact exists as to whether *Bonds* identified himself prior to the arrest. As a preliminary matter, we note that a sworn statement given by Richardson six days after his arrest indicates that he was aware, due to Bonds' conduct upon entering the bar, that Bonds was a police officer, whether or not Bonds extended Richardson the courtesy of formally and explicitly identifying himself. *See* Richardson Dep. Exh. # 1, at 3 ("The assumption [that Bonds was a policeman] came shortly after [Bonds' entry into the bar] *but I still objected to having to give identification for nothing, no reason.*") (emphasis added). More fundamentally, even if a genuine issue of fact exists as to whether Bonds identified himself, we are at a loss to understand how this factual issue is material. Under Rule 37, Richardson was required to identify himself to both private citizens and fellow police officers. Even if Bonds was not a police officer, Richardson was still obliged to identify himself. Richardson has not suggested any other manner in which Bonds' failure to identify

himself could conceivably be material to the validity of the arrest. Therefore this factual issue, even if genuinely disputed, would not prevent the District Court from granting summary judgment to defendant.

**7.** Rules 12(e) and 12(f) have been promulgated in the Northern District of Illinois in an attempt to identify with specificity any controverted issues of fact which might preclude the grant of a motion for summary judgment. Rule 12(e) requires a party moving for summary judgment to identify the uncontroverted facts which the movant believes entitle him to summary judgment, with appropriate references to the record. Under Rule 12(f), the party opposing a summary judgment motion must enumerate the material factual issues which require a trial.

In accepting Richardson's amended Rule 12(f) statement, which disputed certain factual issues considered in the text, Judge Holderman struck plaintiff's accompanying affidavit as untimely. Even if we were to consider this affidavit as properly part of the record, it would not change the result for the reasons given in the text.

which contradicted party's earlier sworn testimony).

■ We conclude that there was no genuine issue of material fact as to whether Bonds knew Richardson was a police officer prior to the arrest. Since Richardson failed to identify himself, in violation of Police Department regulations and the ordinances of the City of Chicago, Bonds was authorized under Illinois law to arrest Richardson. The constitutionality of the ordinance requiring a police officer to identify himself on demand was not settled at the time of the arrest; a reasonably competent police officer could rely on the ordinance in making a warrantless arrest. Bonds is therefore entitled to qualified immunity based on the undisputed facts in the record, and the District Court's grant of summary judgment was proper. The judgment of the District Court is

AFFIRMED.[8]

---

**8.** Since the arrest can be justified, and Bonds' qualified immunity upheld, based on Richardson's failure to identify himself, we need not address the District Court's reliance on the weapons charge in its opinion granting summary judgment.