41 F.3d 1510
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Tannan HARDIMAN, Plaintiff/Appellant,
v.
Charles FORD and Bernard Richter, Defendants/Appellees.
 No. 92-1938.
 United States Court of Appeals, Seventh Circuit.
 Argued Oct. 12, 1994.
Decided Oct. 25, 1994.
 
 Before CUMMINGS, MANION and KANNE, Circuit Judges.
 
 ORDER
 
 1
 Tannan Hardiman filed an action under 42 U.S.C. Sec. 1983 against two Chicago police officers, alleging that they had arrested him without a warrant or probable cause in violation of the Fourth Amendment. The district court granted summary judgment in favor of the defendants, finding that the arrest was supported by probable cause. Fed.R.Civ.P. 56. Hardiman appeals. We affirm.
 
 I. Background
 
 2
 In July 1985, Chicago Police Detective John Fitzsimmons was investigating a series of home invasions in an apartment building located at 811 West Eastwood in the City of Chicago. On July 20, an anonymous informant allegedly called Detective Fitzsimmons and implicated Tannan Hardiman as the individual responsible for the home invasions. Detective Fitzsimmons then researched Hardiman's criminal history, which revealed that Hardiman had three prior burglary or home invasion convictions and at least five other arrests on suspicion of theft, robbery, burglary or home invasion since January 1984. For the last three arrests, Hardiman had given 917 West Eastwood in Chicago as his address. According to Detective Fitzsimmons, Hardiman's criminal record also revealed that on March 13, 1984 and again on March 21, 1985, bond forfeiture warrants for charges of tampering with motor vehicles were issued for Hardiman's arrest, and that Hardiman was arrested on April 9, 1985 on one of those warrants.[1]
 
 
 3
 At some time in the late evening of July 21, Detective Fitzsimmons advised defendants, Detectives Charles Ford and Bernard Richter, of the informant's tip and the information contained in Hardiman's criminal history including the outstanding bond forfeiture warrant against Hardiman. He gave the officers a photograph of Hardiman, and instructed them to go to Hardiman's residence at 917 West Eastwood to "bring him in for questioning." At approximately midnight, the officers arrived at Hardiman's residence and entered the residence without the permission of Hardiman's girlfriend, who answered the door. They then handcuffed Hardiman and took him back to the station. Hardiman was subsequently charged and convicted of one count of residential burglary.
 
 
 4
 While serving his sentence, Hardiman sued Detectives Ford and Ricter for false arrest. Detective Fitzsimmons, however, is not a party to the suit.[2] The district court granted summary judgment in favor of the officers, finding that the officers had probable cause to arrest Hardiman because they reasonably relied on Detective Fitzsimmons' information. The court stated that the officers were entitled to assume that the informant was reliable by the simple fact that Detective Fitzsimmons relied upon the informant. The court then found that "a reliable informant's tip corroborated by plaintiff's criminal history of home invasion is enough to constitute probable cause."
 
 II. Analysis
 
 5
 We review the grant of summary judgment de novo, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986), viewing the record and the inferences drawn from it in the light most favorable to the non-moving party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). We will affirm if there is no genuine issue of material fact such that judgment is proper as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Furthermore, we can affirm the district court's ruling on any basis supported by the record. Casteel v. Pieschek, 3 F.3d 1050, 1052 (7th Cir.1993); see also Libertarian Party of Indiana v. Packard, 741 F.2d 981, 986 (7th Cir.1984). In the context of a Sec. 1983 damages suit, the question of probable cause may be appropriate for disposition on summary judgment if there is no room for a difference of opinion concerning the facts or the reasonable inferences to be drawn from them. Maxwell v. City of Indianapolis, 998 F.2d 431, 434 (7th Cir.1993); Schertz v. Waupaca County, 875 F.2d 578, 582 (7th Cir.1989).
 
 
 6
 The defendants asserted the affirmative defense of qualified immunity in their motion for summary judgment. Because qualified immunity is an immunity from suit, not just from liability for damages, Mitchell v. Forsyth, 472 U.S. 511, 529 (1985), "the availability of immunity in a given case should be decided as early as possible in litigation." Maxwell, 998 F.2d at 467 (citing Hunter v. Bryant, 112 S.Ct. 534, 536 (1991)); see also Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982) (qualified immunity is a "threshold" question); Casteel, 3 F.3d at 1052.
 
 
 7
 Under the doctrine of qualified immunity, the defendant officers could be shielded from suit if "a reasonable officer could have believed the arrest to be lawful, in light of clearly established law and the information the [arresting] officers possessed." Hunter v. Bryant, 112 S.Ct. 534, 536 (1991); Anderson v. Creighton, 483 U.S. 635, 641 (1987). Although cases involving the exact fact pattern as the one at bar are unnecessary to prove that the law was clearly established, "case law in a closely analogous area is crucial to permit [the court] to conclude that reasonably diligent [officers] would have known of the case law, related it to the situation at hand, and molded their conduct accordingly." Lojuk v. Johnson, 770 F.2d 619, 628 (7th Cir.1985), cert. denied, 474 U.S. 1067 (1986); see also Rakovich v. Wade, 850 F.2d 1180, 1209 (7th Cir.) (en banc), cert. denied, 488 U.S. 968 (1988); Powers v. Lightner, 820 F.2d 818, 821 (7th Cir.1987), cert. denied, 484 U.S. 1078 (1988). Moreover, "the standard for immunity has been objective, like the 'reasonableness' component of the fourth amendment itself." Gordon v. Degelmann, No. 93-3463, slip op. at 6 (7th Cir. July 12, 1994).
 
 
 8
 For the police to have probable cause to arrest an individual, "the facts and circumstances within their knowledge and of which they [have] reasonably trustworthy information [must be] sufficient to warrant a prudent person in believing that the [suspect] had committed or was committing an offense." Beck v. Ohio, 379 U.S. 89, 91 (1964). An arresting officer, however, need not personally be aware of the specific facts that established probable cause, but may rely on the "collective knowledge" of the police officers involved in the investigation. See United States v. Ventresca, 380 U.S. 102, 110-11 (1965); United States v. Celio, 945 F.2d 180, 184 (7th Cir.1991); United States v. Griffin, 827 F.2d 1108, 1111 (7th Cir.1987), cert. denied, 485 U.S. 909 (1988). Thus, in the context of a damages suit, "an officer can avoid liability by showing that someone else, who was so placed as to know, or be able to know, more than he did, could have formed a reasonable belief that the arrested person had committed a crime." Mahoney v. Kesery, 976 F.2d 1054, 1058 (7th Cir.1992) (citing Vallanova v. Abrams, 972 F.2d 792, 798 (7th Cir.1992)). So long as the officer's reliance on the "collective knowledge" is objectively reasonable, he will be accorded qualified immunity. See United States v. Hensley, 469 U.S. 221, 232 (1985) (stating that an officer, who made an investigatory stop in "objective reliance" upon a wanted flyer issued by a different police department, may have a good faith defense to any civil suit; "it is the objective reading of the flyer or bulletin that determines whether other police officers can defensibly act in reliance on it."); Celio, 945 F.2d at 184 ("we broaden 'collective knowledge' searches with the understanding that one or both governmental entities involved stand to incur any resulting civil liability should the suspicion on which the request was based prove insufficient or the action taken in reliance on it prove excessive").
 
 
 9
 The key inquiry in this case then is whether the defendant officers reasonably relied on the information related to them by fellow officer, John Fitzsimmons, in believing that the arrest of Hardiman would be lawful under the clearly established law. Officer Fitzsimmons informed the defendant officers that he had received a telephone tip from an informant, who identified Hardiman as being responsible for the residential burglaries at 811 West Eastwood. He advised them of Hardiman's criminal history of similar offenses and an outstanding bond forfeiture warrant against Hardiman. He then directed the officer to go to 917 West Eastwood to bring Hardiman in for questioning. In granting summary judgment in favor of the defendants, the district court found that "a reliable informant's tip corroborated by plaintiff's criminal history of home invasion is enough to constitute probable cause."
 
 
 10
 Contrary to the district court's finding, we find it questionable whether an anonymous informant's tip combined with a criminal history of similar offenses can support the legality of an arrest in the home. The reliability of the tip was not established by the informant's proven credibility, nor is there much independent police work to verify the tip. See Illinois v. Gates, 462 U.S. 213, 230 (1983) (under the "totality of the circumstances" analysis, corroboration of the details of an informant's tip by independent police work is of significant value); Alabama v. White, 110 S.Ct. 2412, 2416 (1990) (informant's tip is given "the weight it deserved in light of its indicia of reliability as established through the independent police work ") (emphasis added). Cf. United States v. Ornelas-Ledesma, 16 F.3d 714, 718 (7th Cir.1994) ("an uncorroborated anonymous tip, even when it comes from law enforcement authorities, does not by itself justify an investigatory stop"). Officer Fitzsimmons' affidavit does not address the informant's veracity or the basis of the informant's knowledge.[3] The only corroboration attempted was Fitzsimmons' review of Hardiman's criminal record. Although a suspect's criminal history is a legitimate factor in a probable cause determination, it seems that more corroborating information is required than the criminal record and a bare assertion of the suspect's guilt by an anonymous informant. See, e.g., Hinnen v. Kelly, 992 F.2d 140 (7th Cir.1993); United States v. McCoy, 977 F.2d 706, 712 (1st Cir.1992); United States v. Jakobetz, 955 F.2d 786, 803 (2d Cir.), cert. denied, 113 S.Ct. 104 (1992); Hopkins v. City of Sierra Vista, 931 F.2d 524 (9th Cir.1991) (an untested anonymous tip of domestic violence plus officer's knowledge of suspect's history of prior disturbances were insufficient to prove the existence of probable cause in a summary judgment, even though the officer heard loud noises and smelled alcohol); United States v. Delgadillo-Velasquez, 856 F.2d 1292, 1296 (9th Cir.1988); United States v. Laws, 808 F.2d 92, 101 (D.C.Cir.1986). See also Beck, 379 U.S. at 97 (although officer's knowledge of a suspect's physical appearance and previous record is relevant upon the issue of probable cause, "to hold that knowledge of either or both of the facts constituted probable cause would be to hold that anyone with a previous criminal record could be arrested at will.").
 
 
 11
 Of course, an officer need not "cross-examine [his] fellow officers about the foundation for the transmitted information." Hensley, 469 U.S. at 232. Yet, even if the defendant officers could reasonably rely on Officer Fitzsimmons as to the reliability of the informant, they were aware that Officer Fitzsimmons did not perform any "independent police work" other than a research of Hardiman's criminal history.[4] Moreover, the law is established that absent consent or exigent circumstances, a warrant is required to arrest a suspect in his home. Payton v. New York, 445 U.S. 573 (1980); Villanova v. Abrams, 972 F.2d 792, 795 (7th Cir.1992). The officers did not have a warrant with them when they handcuffed Hardiman in his home.
 
 
 12
 But the officers were also told by Officer Fitzsimmons that there was an outstanding bond forfeiture warrant issued against Hardiman for tampering with motor vehicles. Hardiman argues that it is disputed whether such a warrant actually existed because the defendants could point to none other than those issued for the name "James Burch." He also argues that even if the warrant did in fact exist, it could not justify an arrest for a home invasion charge. Hardiman's argument fails for several reasons. Aside from the fact that the bond forfeiture warrant appeared in Hardiman's criminal history, Hardiman does not dispute that Officer Fitzsimmons, who is not a party to the suit, told the defendants that such a warrant was issued for Hardiman's arrest. At issue is the reasonableness of the defendants' reliance on that statement, not whether a warrant actually existed. Furthermore, although the officers arrested Hardiman for the investigation of certain home invasions, not vehicle tampering, this court has said that for qualified immunity to apply, an officer's subjective view of the legal basis for the arrest is irrelevant. Biddle v. Martin, 992 F.2d 673, 676 (7th Cir.1993); Richardson v. Bonds, 860 F.2d 1427, 1429 (7th Cir.1988). "Under the principles of Harlow v. Fitzgerald and the fourth amendment, an objective standard applies where the parties present alternative legal justifications for an arrest." Richardson, 860 F.2d at 1429.
 
 
 13
 In the context of this case where it is the "collective knowledge" of the officers that provided the legal justification for the arrest, this court must ask whether the defendant officers could rely in objective good faith on Officer Fitzsimmons as to the existence of the warrant in executing the arrest, regardless of whether a warrant really existed, or whether Officer Fitzsimmons had lied about the existence of the warrant. We think that they could. In Whiteley v. Warden, 401 U.S. 560, 568 (1971), the Supreme Court said that officers may treat information that a warrant is outstanding for a suspect's arrest as presumptively correct. See Ruehman v. Sheahan, No. 93-4031, slip op. at 3 (7th Cir. Sept. 6, 1994). Thus, absent unusual circumstances that would indicate to the defendants that Officer Fitzsimmons' information could not be trusted, the defendants could presume there was in fact an outstanding warrant for Hardiman's arrest and therefore be accorded immunity for their good faith reliance. See Capone v. Marinelli, 868 F.2d 102 (3rd Cir.1989) (holding that a police officer who reasonably relies upon a bulletin that establishes the existence of a warrant for arrest is entitled to qualified immunity for unlawful arrest and prosecution). Although Hardiman argues that an arresting officer should be required to conduct an independent investigation to ascertain the existence of an alleged warrant before arresting a suspect in his home, he cites no binding precedent that would support this extension to the "collective knowledge" doctrine. See Rakovich, 850 F.2d at 1209 (where the affirmative defense of qualified immunity is properly raised, "the plaintiff bears the burden of establishing the existence of the allegedly clearly established constitutional right").
 
 
 14
 Because the defendants did not violate "clearly established constitutional rights of which a reasonable person would have known," Harlow, 457 U.S. at 818 (1982), they are entitled to qualified immunity. Accordingly, we AFFIRM the district court's grant of summary judgment.
 
 
 
 [1]
 The criminal history sheet upon which Officer Fitzsimmons relied bears numerous names all with the same birth date and I.R. No. 426903. See Appellant's Appendix at A-59. The last two entries are in Hardiman's name at 917 Eastwood. Immediately prior to the Hardiman entries are entries in the name of James Burch reflecting outstanding bond forfeiture warrants. Presumably, Burch is simply an alias for Hardiman, although it is unclear from the record
 
 
 [2]
 Apparently Fitzsimmons was never served with process within the statute of limitations
 
 
 [3]
 Officer Fitzsimmons' affidavit was prepared six years after the arrest in support of defendants' motion for summary judgment. At the time he prepared his affidavit, Officer Fitzsimmons could not recall any details about the informant. The defendants argued before the district court that the doctrine of laches should preclude Hardiman's suit because they were deprived of Officer Fitzsimmons' memory of the specific details of his conversation with the now unknown informant. The defendants, however, abandoned this issue on appeal
 
 
 [4]
 It is possible, though the defendants do not argue, that Officer Fitzsimmons or the defendant officers had considered the proximity of Hardiman's residence to the scene of crime as another factor in the probable cause analysis