**Kathryn J. SHEPLEY, Plaintiff,**

v.

**E.I. DuPONT DE NEMOURS AND COMPANY, INC., Defendant.**

No. 87–1307.

United States District Court, C.D. Illinois, Peoria Division.

Aug. 21, 1989.

---

Nile J. Williamson, Peoria, Ill., for plaintiff.

Ronald J. Hein, Jr., Chicago, Ill., for defendant.

## ORDER

MIHM, District Judge.

## I. BACKGROUND

### A. *Facts*

Defendant, E.I. DuPont De Nemours and Company, Inc. (hereinafter "DuPont"), operates a plant in El Paso, Illinois. Plaintiff, Kathryn Shepley, was employed by DuPont at the El Paso plant from October of 1986 until May 26, 1987 when she was terminated.

Shepley brought this lawsuit to contest her termination. She claims that DuPont promulgated a Disciplinary Policy which bestowed upon her contractual rights to some lesser form of discipline than discharge. Diversity jurisdiction has been pled. DuPont has moved for summary judgment on the grounds that (a) Shepley has admitted that she was an at will employee rather than a contractual employee; (b) the Disciplinary Policy was not a contract; and (c) even if the policy were a contract, Shepley's discharge was justified under the policy. For the reasons stated below, the Motion for Summary Judgment is GRANTED.

On May 15, 1986, Shepley was working as the "whiz" in the Distribution Office at the El Paso plant. As the whiz, she was responsible for monitoring trucks coming

into and going out of the plant. On this particular day, Shepley was also responsible for opening the mail which came into the Distribution Office, although she had not been instructed on any particular method of handling personal mail.

As Shepley was opening the mail on this day, she encountered a large interoffice envelope addressed to another distribution employee, Deb Stine, who normally opened mail in the distribution office. Shepley opened the envelope and removed a sealed blue greeting card sandwiched between two white pieces of paper. There was no writing on the envelope. She walked over to another desk where a co-employee, Tony Haas, was on the phone, took an emery board and opened the blue envelope. Inside the blue envelope was a greeting card which Shepley removed from the blue envelope as she walked back to her desk.

Shepley opened the card and saw that it said "Something about missing you is like losing your balloons and ice cream at the same time." Instead of a signature, the card was signed with a logo which Shepley recognized as that of Randy Maurer, another employee at the DuPont facility. Shepley concluded that the personal card had been sent from Mr. Maurer to Ms. Stine.

Shepley was aware of rumors within the plant that Ms. Stine and Mr. Maurer were having an extramarital affair. Both were married to others, and Mr. Maurer's wife, a friend of Shepley's, worked at the DuPont plant as well. Shepley became angry and crumpled both the card and the blue envelope. She then put the card back into the large distribution envelope.

At this time, Mr. Haas asked Shepley what she was doing. Despite the fact that she thought that the card was a personal message from Mr. Maurer to Ms. Stine, she pulled out the distribution envelope, opened it up, pulled out the envelope with the card, opened it up and showed the card to Mr. Haas.

Later that morning, after Mr. Haas left the office, Bobbi Hornbeck, another distribution employee, came into the distribution office. Shepley again removed the card from the envelope and showed it to Ms.

Hornbeck as well. Glenda Malcolm arrived shortly thereafter. When Ms. Malcolm arrived at the distribution office, Shepley showed the card to Ms. Malcolm as well. Shepley then took the envelope containing the card and placed it in her bottom desk drawer. Later that morning, Shepley's husband, also an employee of DuPont at the El Paso plant, came in to fix the office air conditioner. She showed the card to her husband as she had shown it to Mr. Haas, Ms. Hornbeck and Ms. Malcolm.

At approximately lunch time, Shepley took the card out of her desk drawer and locked it in her own personal locker. From the time Shepley opened the card until her discharge on May 27, 1987, she made no effort to give the card to or discuss it with either Mr. Maurer or Ms. Stine. The card remained locked in Shepley's personal locker until plant management instructed her to retrieve it.

Almost immediately after Shepley began showing the card to her co-workers, she became aware of rumors which had begun to spread throughout the plant concerning the card. For example, that afternoon, two employees, Bill West and Dan Harrison, came into the distribution office and asked Shepley if she had been getting any love letters in the mail lately. She also knew that her husband had approached Mr. Maurer about his knowledge of the card. In addition, Shepley knew that Mr. Maurer had talked with Glenda Malcolm and had asked her about the rumors going around.

During the following week, Shepley mentioned to Tommy Bill, the Department Manager of Operations, that she had opened a piece of mail addressed to another employee. Bill, understanding the comments to mean that she was concerned with having innocently opened someone else's mail and not that she had failed to subsequently deliver it to its rightful recipient, advised her that there was nothing wrong with inadvertently opening another's mail and that he, in fact, had mistakenly done so with the mail of an individual (Mr. Brill) with a name similar to his own.

Word of the situation ultimately reached Dick Page, the Plant Manager at the El

Paso facility. On the morning of May 21, 1987, Maurer came to Page to discuss the rumors. Mr. Maurer stated that his wife, Dee, also a DuPont employee, was very distraught and upset and had taken off work because of the rumors that he and Ms. Stine were having an extramarital affair. Maurer requested time to go home and console his wife and attempt to work out the marital problems that had developed over this incident.

After this discussion, Page directed Tommy Bill to talk with Shepley and ascertain what was going on. Shepley met with Bill later that morning and admitted upon inquiry that she still had the card. Bill directed her to retrieve the card from her locker, which she did. When Page learned of this, he asked Bill and Gary Lewis, the Human Resource Manager, to conduct an investigation of the incident and to make a recommendation based on that investigation. The investigation was started that morning, May 27, 1987.

Bill and Ed Johnson, the Human Resources Facilitator, interviewed employees who were involved with, or had knowledge of, the incident. They first interviewed Shepley. During the interview, Shepley admitted that she had realized, upon opening the card, that the mail was personal. She advised Bill and Johnson that she intended to keep the card in her locker until things cooled down and then take it home and burn it. She also stated that if Randy and Dee Maurer had not been such good friends, she would have just put the card back in the mail to Deb Stine after she had opened it. When asked if she intended to give the card to Ms. Stine, Shepley replied, "I had no intention of giving the card to Deb."

Shepley was asked three times during the interview to identify all persons to whom she had shown the card. On each occasion, she replied that she had shown the card only to her husband and to Mr. Haas. While she couldn't remember, she also believes she may have told them she had shown the card to Ms. Hornbeck. Despite being asked three times, however, she did not reveal that she had shown the card to Ms. Malcolm. Shepley claims that she did not recall during the meeting that she had shown the card to Ms. Malcolm, but admitted that she recalled later that same day that she had shown the card to Ms. Malcolm and that she made no effort to apprise management of such at any time after her interview.

After Shepley's interview, she was sent home and told not to return to work until she heard from DuPont. She knew at that time that her job was in serious jeopardy.

On May 22, 1987, the senior management team at the El Paso facility met to discuss the matter. Present at the meeting were Mr. Page, the Plant Manager; Mel Jennings, the Economics and Scheduling Manager; Hank Brill, the Finance Manager; Gary Lewis, the Human Resources Manager; Gordon Marsden, the Technical Manager; Bill, the Operations Manager; and Ed Johnson, the Human Resources Facilitator. Based upon its investigation of the incident, Management determined that Shepley had committed the following three offenses: (1) she had withheld personal mail with no intent to deliver it to its rightful owner or recipient; (2) she had disrupted the workplace by showing the personal mail to other employees; and (3) she had lied to supervision during the May 21 interview when, despite being asked three times, she failed to identify all the people to whom she had shown the card.

Page concluded that, based upon the aforesaid facts, Shepley's employment would be terminated on May 26, 1987. Shepley was called in to the plant on that day, at which time she was informed of her discharge and the reasons therefor. At this termination meeting, Shepley was asked one last time to identify those individuals to whom she had shown the card; she again failed to identify Ms. Malcolm.

B. *The Disciplinary Policy*

In approximately October of 1986, DuPont established a written Disciplinary Procedure at its El Paso facility. The Disciplinary Procedure sets forth a progressive disciplinary scheme for various misconduct and further provides that:

EMPLOYEES CAN GO DIRECTLY TO MORE SEVERE STEPS (SPECIAL REVIEW, PROBATION, TERMINATION) IN THE DISCIPLINARY PROCESS IF THE INCIDENT WARRANTS. SOME EXAMPLES: MAJOR LOCKOUT VIOLATION, SHOOTING A SUPERVISOR, SUBSTANCE ABUSE.

At no time during her employment with DuPont did Shepley ever receive a written copy of the Disciplinary Procedure. Her first exposure to disciplinary procedures came shortly after her hire by DuPont, when she attended a company meeting at which disciplinary procedures were discussed. She recalls only vaguely this discussion and believes that it was addressed solely to discipline imposed for safety violations. Shepley recalls that during this meeting a slide presentation was made at which several pages of the Disciplinary Procedure were displayed. She recalls that she was shown the page quoted above pertaining to by-pass of disciplinary steps, but she does not recall any discussion of the steps of the disciplinary procedure.

Shepley's next exposure to the disciplinary procedure came at a weekly safety meeting conducted by her team leader, Tom Harvey, sometime in March, April, or May of 1987. At this meeting, Mr. Harvey outlined the disciplinary steps. Shepley admits, however, that she was only half-listening and cannot recall what the description entailed. She does recall Mr. Harvey informing her team members that shooting a supervisor, alcohol and drugs, and stealing were examples of actions which would result in immediate termination. Shepley also admits that she understood that other actions could result in immediate termination as well.

### C. *The Summary Judgment Motion*

Plaintiff's Complaint is based on the theory that DuPont's Disciplinary Procedure constituted a contract between Plaintiff and DuPont under *Duldulao v. St. Mary of Nazareth Hospital,* 115 Ill.2d 482, 505 N.E.2d 314, 106 Ill.Dec. 8 (1987) and that DuPont violated this contract by discharging Plaintiff rather than imposing a

lesser penalty as is provided for in the progressive discipline procedure in DuPont's Disciplinary Policy.

DuPont has moved for summary judgment on the Complaint on the basis that: (a) Plaintiff failed to establish that the Disciplinary Policy was a contract between DuPont and Plaintiff; (b) Plaintiff admitted in Paragraph 3 of her Complaint that she was an at-will employee and thereby foreclosed any claim of contractual rights; and (c) in the alternative, even if the Disciplinary Policy was a contract between DuPont and Plaintiff, Plaintiff's actions, nevertheless, justified her discharge.

Plaintiff disputes each of these contentions arguing that the elements of contract formation have been established and that she is guilty of no misconduct justifying discharge under the policy. Plaintiff contends that her actions were a result of Defendant's failure to instruct her on proper handling procedures of personal interoffice mail.

To support this contention, Plaintiff attached an affidavit to her Response to DuPont's Motion for Summary Judgment wherein she states that a fellow employee had taken possession of a piece of interoffice mail and had reported it to her supervisor without any action being taken. Premised on this affidavit, Plaintiff contends that there is an issue of material fact concerning whether her discharge constituted a breach of contract by Defendant.

## II. DISCUSSION

### A. *Summary Judgment Generally*

The Federal Rules of Civil Procedure provide that a party is entitled to summary judgment whenever "the pleadings [and] depositions ... together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

The Supreme Court has counseled that the summary judgment procedure is "properly regarded not as a disfavored procedural shortcut, but rather an an integral part of the Federal Rules." *Celotex Corpora-*

*tion v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A party seeking to avoid summary judgment must provide evidence such that a reasonable trier of fact would return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986):

> If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

\* \* \* \* \* \*

> [T]he judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair minded jury could return a verdict for the plaintiff on the evidence presented.

To survive summary judgment, Plaintiff must present such evidence as to each element essential to her claim. The failure to do so with respect to any essential element "necessarily renders all other facts immaterial." *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552.

### B. *Was There a Contract?*

Under Illinois law, employment without a fixed duration is presumed to be terminable at-will. *Duldulao v. St. Mary of Nazareth Hospital,* 115 Ill.2d 482, 505 N.E.2d 314, 106 Ill.Dec. 8 (1987). This presumption can be overcome through reliance on an employee manual or policy only by demonstrating that the traditional requirements of contract formation are present. *Id.* at 485, 505 N.E.2d 314, 106 Ill.Dec. 8. First, the language of the policy must contain a promise clear enough that an employee would reasonably believe that an offer has been made. Second, the promise must be disseminated to the employee in such a manner that the employee is aware of its contents and reasonably believes it to be an offer. Third, the employee must accept the offer by commencing or continuing the work after learning of the policy. *Id.* at 490, 505 N.E.2d 314, 106 Ill.Dec. 8.

In its Motion for Summary Judgment, Defendant first contends that Plaintiff failed to establish that the Disciplinary Policy contains a clear promise of progressive discipline because the Disciplinary Policy expressly provides: (a) that progressive discipline is not mandatory; and (b) that the list of offenses which will result in immediate termination is not exhaustive.

Under *Duldulao,* where a disciplinary procedure is expressly not mandatory and does not contain definitive language requiring its use under the facts before it, there can be no clear promise of such a procedure and thus no contractual rights.

■ This Court finds that the DuPont Disciplinary Policy expressly allows for immediate discharge and the bypassing of other disciplinary actions and that the policy contains a nonexhaustive list of offenses which may result in immediate termination, (i.e., "some examples"). The policy does not expressly exclude Plaintiff's misconduct from possible immediate termination. Not only does the policy expressly state that immediate termination examples are not exclusive, it is undisputed that Plaintiff knew this. Plaintiff was, in fact, expressly told that stealing, an offense not listed in the policy, would result in immediate termination. The undisputed evidence establishes that Plaintiff took the greeting card with the intent not to deliver it to the rightful recipient.

Because the Disciplinary Policy expressly provided that progressive discipline was not mandatory and expressly provided a non-exclusive list of terminable offenses, there was no contract between Plaintiff and Defendant requiring progressive discipline. On this basis alone, summary judgment in Defendant's favor would be proper and is therefore granted.

Even if there had been clear promise, however, Defendant contends that Plaintiff failed to establish that the policy was disseminated to her in such a manner as to create an enforceable contract.

An employee cannot meet the dissemination requirement by merely providing that she knew of the existence of the disciplinary procedure. *Duldulao* requires that the policy "must be disseminated to the employee in such a manner that the employee *is aware of its contents* and *reason-*

*ably believes* it to be an offer." *Beavers,* quoting *Duldulao,* 115 Ill.2d at 490, 505 N.E.2d 314, 106 Ill.Dec. 8, (emphasis added).

■ Plaintiff admits that she never received the policy upon which she relies in this action. Her knowledge of its contents and existence came from two meetings. Plaintiff recalls vaguely that at the first meeting there was some discussion of discipline for safety violations and she recalls being shown several pages of the policy. At the second meeting she recalls that disciplinary steps and exceptions justifying immediate termination were discussed, but she was admittedly only half listening. Plaintiff has also admitted that she does not know in what way DuPont violated its disciplinary procedures or how DuPont failed to follow its Disciplinary Policy.

In light of the fact that Plaintiff never received the Disciplinary Policy during employment with Defendant, was exposed to the disciplinary procedure only in one meeting addressed solely to safety and in one other meeting (the substance of which Plaintiff cannot recall), this Court finds that the policy was not disseminated to Plaintiff in such a manner that she was aware of its contents or reasonably believed it to be an offer of progressive discipline. *Duldulao,* supra, 115 Ill.2d at 490, 505 N.E.2d 314, 106 Ill.Dec. 8. Summary judgment is therefore appropriate on this basis and is granted in Defendant's favor.

### C. *Was She an At–Will Employee?*

Defendant also moves for summary judgment on the basis that Plaintiff admitted that she was an "at-will employee ... when she was terminated by ... DuPont...." Where an employee is at-will, she may be discharged for good reason, bad reason or no reason at all. *Clay v. Quartet Mfg. Co.,* 644 F.Supp. 56, 62 (N.D.Ill.1986). Normally, the failure of a plaintiff to allege that he or she is anything more than at at-will employee is fatal to a claim of wrongful discharge in breach of contract. *Id.*

Plaintiff, however, disputes Defendant's claim that her Complaint allegation was an admission of at-will status. It is her contention that the promulgation of the Disciplinary Policy modified her at-will employment status.

Although Plaintiff's verified Complaint does not specifically allege that her at-will status became modified at the time the Disciplinary Policy was promulgated, for purposes of this motion, this Court finds that the allegation of at-will status in the Complaint was not a binding admission. It appears instead that it was an attempt to state that Plaintiff's at-will status changed after the promulgation of the Disciplinary Policy. Summary Judgment on this basis is therefore denied.

### D. *Did the Discharge Violate the Policy?*

Defendant finally contends that, even if the Disciplinary Policy was contractual, discharge of Plaintiff was not in violation of the policy and, therefore, summary judgment in Defendant's favor is required. As noted, Defendant terminated Plaintiff for three reasons: (1) taking another employee's personal mail with the intent not to deliver it to its rightful owner or recipient; (2) lying to management about to whom she had shown the card; and (3) disrupting the workplace.

The Disciplinary Policy expressly allows for immediate termination for incidents that warrant such. Therefore, progressive discipline was not required in all instances of employee misconduct. The issue thus presented is whether Plaintiff's actions were of such a nature to warrant immediate discharge.

■ With respect to Defendant's claim that Plaintiff lied to management, this Court finds that a question of fact exists which precludes summary judgment on this basis. It is true that dishonesty is normally a sufficient reason to justify discharge. *Roundtree v. Board of Review,* 4 Ill. App.3d 695, 281 N.E.2d 360 (1st Dist.1972). In the present case, however, Plaintiff contends that her failure to identify all individuals to whom she had shown the card was a lapse of memory rather than an intentional falsehood. This contention creates a

question of fact concerning whether Plaintiff intentionally lied and therefore summary judgment on this basis is inappropriate.

■ Defendant's contentions of theft and disruption of the workplace are a different matter. It is undisputed that at the time Plaintiff was told of the contents of the Disciplinary Policy, she was informed that, in addition to the listed examples, stealing was an event which would precipitate immediate termination. It is also beyond dispute that Plaintiff committed this very offense. She admitted that she took the mail and had no intention of giving it to Mr. Maurer or Ms. Stine.

Since Plaintiff was aware that stealing was an offense for which one could be immediately terminated, it is clear that her termination was not in conflict with the Disciplinary Policy upon which she relies. Summary judgment is therefore appropriate and is granted in DuPont's favor.

Indeed, even without Plaintiff's admission that she knew that stealing was a terminable offense, DuPont would have been justified in its actions given the seriousness of Plaintiff's misconduct. It is well established that theft of mail or other items at the place of employment is a serious offense which normally justifies discharge. *Enis v. Continental Illinois National Bank & Trust,* 795 F.2d 39 (7th Cir.1986).

Plaintiff argues that despite her admission, she did not intend to steal the card. In support of such, she cites the fact that when Management demanded that she return the card, she did so. This Court fails to see how compliance with the company's demand casts any doubt on Plaintiff's admitted intent to steal and therefore finds this contention without support and inadequate to preclude summary judgment in Defendant's favor.

Separate from the theft, Defendant argues that it was also justified in terminating Plaintiff because of the disruption she caused in the workplace by her actions of showing the personal card to a number of co-workers.

Disruption of the workplace, if serious enough, is sufficient ground for discharge. *See, e.g., Farrakhan v. Sears Roebuck & Company,* 511 F.Supp. 893 (D.C.Neb.1980). Plaintiff contends that her actions did not cause serious disruption of the workplace.

■ The undisputed evidence establishes, however, that Plaintiff had shown the card to several employees, that rumors spread throughout the workplace concerning the card, that these rumors had caused the wife of the individual who sent the intimate card to leave work at DuPont because she was upset, that the card sender also requested time off work to console his wife and try to resolve their marital problems and that the Company was aware of these matters at the time the discharge decision was made.

This Court therefore finds that Plaintiff's actions caused a serious disruption of the workplace which justified her discharge under the terms of the Disciplinary Policy. Summary judgment is therefore appropriate and is granted.

The remainder of Plaintiff's arguments on her commission of the disruption and theft, misconduct and the propriety of her punishment for such, are similarly insufficient to preclude summary judgment. For example, Plaintiff contends that she was not instructed on the proper procedure for handling interoffice mail, yet it is undisputed that the mere opening of the letter was not what precipitated her discharge but, rather, her actions after opening such mail.

Similarly, Plaintiff contends that Mr. Bill, a supervisory employee, admitted that he had opened the mail of another employee Mr. Brill. Yet it is undisputed that this was done inadvertently due to the similarity of Mr. Bill's and Mr. Brill's name and, in any event, cannot be said to sanction Plaintiff's conduct of stealing the card or exhibiting it to others.

The Plaintiff attached an affidavit to her response to DuPont's Motion for Summary Judgment wherein she states that a fellow employee, Ms. Knoll, had taken possession of someone else's interoffice mail and had reported it to her supervisor without a job action being taken against her. Premised

on this affidavit, Plaintiff contends that there is an issue of material fact concerning whether her discharge was a breach of contract by Defendant. Defendant argues that the affidavit must be stricken because the affiant lacks personal knowledge and because it is hearsay.

The scenario recounted in the affidavit concerning Plaintiff's co-employee is in no way analogous to those actions of Plaintiff which resulted in discharge. Plaintiff's discharge was not premised on taking a piece of interoffice mail and reporting the same to a supervisor but rather on Plaintiff's taking of interoffice mail with the admitted intent not to deliver it to the rightful owner; in addition, the resulting disruption of the workplace was not a consequence discussed in the affidavit. Because the circumstances surrounding the incident discussed in the affidavit are so different than the ones in the case before the Court, Plaintiff's contentions of a factual dispute is without merit.

■ In any event, the affidavit must be stricken on the grounds that it is not based on the affiant's personal knowledge as required by Fed.R.Civ.P. 56(e). Rule 56(e) requires that an affiant have personal knowledge of the contents of the affidavit. Plaintiff's affidavit states that she has personal knowledge of the matters attested to but ultimately states that her knowledge of such was "related to" her by another employee. Therefore, it is beyond dispute that the affidavit is not based on personal knowledge.

Additionally, it is clear from the face of the affidavit that, not only has Plaintiff failed to establish her own personal knowledge of the events recounted, Plaintiff has also failed to establish that Ms. Knoll, the purported hearsay declarant, had personal knowledge of the events purportedly "related" to the Plaintiff. For example, while the affidavit recites that Mr. Haas wrote and deposited a memo in interoffice mail, we are not informed how Ms. Knoll learned of these events. This assertion, therefore, fails to meet the requirements of Rule 56(e).

In sum, it is well established that, if a party cannot state any personal knowledge regarding the accuracy of the facts presented by the source cited by the affiant, "the affidavit ... cannot be considered by the Court in the determination of the issues herein involved." *Arkansas Best Freight System, Inc. v. Youngblood,* 61 F.R.D. 565, 569 (W.D.Ark.1974). Nothing besides the Plaintiff's bare allegation of personal knowledge supports the accuracy of the assertions recounted in the affidavit. Similarly, Plaintiff fails to set forth the manner in which Ms. Knoll acquired her alleged personal knowledge of the events recounted therein. Because the Plaintiff does not establish in her affidavit her personal knowledge as to the facts asserted, her affidavit must be, and hereby is, stricken.

Plaintiff also argues that there is no hearsay problem because the statement and actions of the Plaintiff's co-worker, Ms. Knoll, recounted in the affidavit, constitute an admission of a party opponent under Rule 801(d)(2)(D) of the Federal Rules of Evidence. Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. Rule 801(c) of the Federal Rules of Evidence. To be admissible as a party admission under Federal Rule of Evidence 801(d)(2)(D), a declaration "must be contrary to that party's position at the time of trial." *Butler v. Southern Pacific Co.,* 431 F.2d 77, 80 (6th Cir.1970).

■ The Defendant has never taken the position contrary to the position allegedly stated to Plaintiff by her co-worker. Indeed, nothing in this litigation would appear to require the Defendant to take a position on the dissimilar situation claimed by the Plaintiff in her account of a co-worker's alleged statements. Since this statement is not contrary to DuPont's position, it does not constitute an admission and therefore lacks "the foundation for trustworthiness on which this rule is based." *Donovan v. Crisostomo,* 689 F.2d 869, 876 (9th Cir.1982). The affidavit must be stricken.

■ Additionally, 801(d)(2)(D) allows into evidence an admission against interest stated by an employee of the defendant only if the employee is speaking within the scope of her employment. Although the Plaintiff claims that the co-worker's declaration was "about actions specifically involving her job," this is insufficient to make the alleged declaration "within the scope of employment" for purposes of 801(d)(2)(D).

As noted, the affidavit is ultimately offered for, and its admissibility is premised solely on, the contention that it is a vicarious admission by DuPont. In this regard the only matter attested to, which Plaintiff claims to constitute an admission, is DuPont's alleged failure to discipline Ms. Knoll after she took, and informed DuPont that she had taken, a piece of interoffice mail. It is well established, however, that where an employee makes a statement about corporate decision-making and yet is not involved in that decision, that statement does not fall within the scope of her employment. *Cebula v. General Electric Company*, 614 F.Supp. 260 (N.D.Ill.1985). In *Cebula*, an age discrimination case, the plaintiff had asserted in a summary judgment motion affidavit that fellow employees had told him that the defendant was "out to get older employees." Because the employees were not involved in the decision to terminate the Plaintiff, and because the statements were not made in the context of their agency or in the service of their employer, the court found that the statements were not made in the scope of employment and were not admissible under 801(d)(2)(D). *Cebula*, 614 F.Supp. at 216; *accord Breneman v. Kennecott Corp.*, 799 F.2d 470, 473 (9th Cir.1986); *Strauch v. United States*, 637 F.2d 477, 481 (7th Cir.1980).

In the instant case, there is similarly nothing which would indicate that Ms. Knoll was involved with, or aware of, the decision-making process of Defendant as it applied to her purported actions. To the contrary, the affidavit recounts that Ms. Knoll told a supervisory employee of her actions, which indicates that she was a low-level employee not involved in the decision-making process at DuPont. *See, e.g., M.C.I. v. AT & T Co.*, 708 F.2d 1081, 1143

(7th Cir.1983) (holding that where employee is low-level employee, the statement by the employee is less likely to be an admission under 801(d)(2)(D)). *See also, Cebula*, 614 F.Supp. at 216.

Indeed, in the instant case it would be absurd to accord any credence to a claim that Ms. Knoll did possess such authority or was involved in the decision-making process since it was allegedly her actions which were at issue. In short, this lack of involvement is fatal to Plaintiff's claim that the affidavit is admissible as a vicarious admission by Defendant.

The cases cited by Plaintiff to support her vicarious admission theory, *United States v. Ramsey*, 785 F.2d 184 (7th Cir.), *cert. denied*, 476 U.S. 1186, 106 S.Ct. 2924, 91 L.Ed.2d 552 (1986) and *Michaels v. Michaels*, 767 F.2d 1185 (7th Cir.1985), are inapposite. *Michaels* concerns different issues of admissibility under Rule 801(d)(2)(C) of the Federal Rules of Evidence, dealing with a declarant explicitly authorized by the party opponent to make a statement concerning the subject attested to. In *Ramsey* the statements admitted under 801(d)(2)(D) were clearly within the scope of the declarant's employment. There the statements were communications by the defendant's employee acting as a loan officer in a fraudulent loan service. The statements were made to victims regarding the employee's purported job mission—bilking customers out of funds.

Therefore, the Court finds that this is not an admission of a party opponent and that this is hearsay. The affidavit is ordered stricken.

## CONCLUSION

In sum, this Court finds that Plaintiff has not established that the Disciplinary Policy is a contract. This Court further finds that, even if the Disciplinary Policy did bestow contract rights upon Plaintiff, Defendant was justified under the policy in its decision to terminate Plaintiff for theft and/or disruption of the workplace. Furthermore, Plaintiff's affidavit, being stricken, forms no genuine issue of material fact.

Summary judgment is therefore GRANT-ED in Defendant's favor. The Clerk is directed to enter final judgment in a civil case.